EMMA SYLVIA'S CASE.

Suffolk.    April 12, 13, 1937. — June 29, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Workmen's Compensation Act*, Injuries to which act applies.  *Contract*,
Of employment.

Injuries, received by a kitchen helper in a hospital while pressing her
working clothes in the hospital laundry habitually used with permis-
sion by all employees of the hospital, rightly could be found to have
arisen out of and in the course of her employment.

CERTIFICATION to the Superior Court under the work-
men's compensation act of a decision by the Industrial
Accident Board awarding compensation.

From a decree entered by order of *F. T. Hammond*, J.,
in accordance with the decision of the board, the insurer
appealed.

*G. Gleason*, (*W. G. Reed* with him,) for the insurer.

*S. B. Horovitz*, (*M. A. Goldberg & B. A. Petkun* with him,)
for the employee.

QUA, J.  The employee's work consisted of washing pans,
washing the floors and helping in various other ways as a
maid in the kitchen of a hospital.  She was injured in the
laundry, which is across the hall from the kitchen, by catch-
ing her hand in a presser while pressing her own clothes.
The question to be determined is whether the evidence will
support the finding of the board that the injury arose out
of and in the course of the employment.

The evidence most favorable to the employee was in
substance this:  She wore whatever clothes she wished,
except that the kitchen help wore cotton house dresses.
She took care of her washing herself wherever she chose.
She was permitted to use the hospital laundry, and it was
"usual for these employees around the hospital to go in
the laundry when they wanted to wash their clothes and
the laundresses were not there."  The laundresses were not

there at the time of the accident. "Everyone in the hospital had permission to use that laundry if they wanted to." The employee used the laundry two or three times a month. She used it only for clothes she had soiled in the hospital. She had a dress and an apron to wash and press that day. It was near the end of her day's work, and she had arranged to have the cook perform for her such of her tasks as remained undone in the kitchen.

We think that the habitual use by the employee of the employer's laundry, with the latter's permission, for the purpose of washing clothes soiled in the employer's service, in connection with the habitual use by other employees, could be found to have been more than a mere favor or gratuity, and that, as an established practice with possible elements of convenience and advantage on both sides, it could be found to have become by mutual understanding an incident of the employment itself.

In *Watkins* v. *New York, New Haven & Hartford Railroad*, 290 Mass. 448, 451, we said, "A servant who, according to custom, is washing his working clothes or other equipment connected with his employment, may be found to be within the protection of the relationship of master and servant, although the washing is not required nor paid for." The case at bar is controlled by the principles of the *Watkins* case and of *Donovan's Case*, 217 Mass. 76, *Sundine's Case*, 218 Mass. 1, *Von Ette's Case*, 223 Mass. 56, *Osterbrink's Case*, 229 Mass. 407, and *Hughes's Case*, 274 Mass. 540, and is distinguishable from *O'Toole's Case*, 229 Mass. 165, *Babineau's Case*, 254 Mass. 214, *Savage's Case*, 257 Mass. 30 (where the board found against the employee), and from other cases cited by the insurer. Compare *Vitas* v. *Grace Hospital Society*, 107 Conn. 512, and *Daly* v. *Bates & Roberts*, 224 N. Y. 126.

This is not a case for the imposition of costs under G. L. (Ter. Ed.) c. 152, § 14, as this appeal has not been prosecuted "without reasonable ground."

*Decree affirmed.*