## RALPH D. CHAPMAN'S CASE.

Hampden.    September 18, 1947. — November 4, 1947.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Workmen's Compensation Act*, Injuries to which act applies; Procedure: requests for rulings, appeal. *Agency*, Scope of authority or employment. *Evidence*, Relevancy and materiality. *Error*, Whether error harmful.

Evidence appearing in the record certified to the Superior Court in a case under the workmen's compensation act did not show to be unsupported a conclusion by the Industrial Accident Board that an employee received injuries which arose out of and in the course of his employment while using a machine of his employer in milling lumber on an order to the employee from a third party, the lumber having been delivered to the employee by the employer according to a custom, established by the employer for his own convenience, of selling lumber through employees whereby the price of the lumber was charged to the employee's account and deducted from his pay and payment, when received by the employee from the customer, was turned over to the employer, who then reimbursed the employee, and who received the entire benefit from such transaction.

Negligence, short of serious and wilful misconduct, of an employee resulting in his injury while performing the work involved in his employment, does not remove the work beyond the employment nor preclude a finding that the injury arose out of and in the course of the employment under the workmen's compensation act.

The mere fact that the performance of duties which resulted in injury to an employee occurred on the employer's premises during a luncheon period did not bar a claim for compensation under the workmen's compensation act.

There is no need of making requests to the Industrial Accident Board, in a proceeding under the workmen's compensation act, for rulings to the effect that upon all the evidence certain facts essential to an award cannot be found: such questions will be presented, without such requests, upon the decision certified to the Superior Court by the board.

Certain evidence tending to establish a custom adopted by an employer
for his own convenience of selling lumber to third parties through his
employees and permitting the employees to mill it on his machines,
and of conduct of an employee and of a foreman with respect thereto,
properly was admitted, at the hearing of a claim by the employee under
the workmen's compensation act for injuries received while so using
a machine, to show that the injury arose out of and in the course of
his employment.

A decree in a workmen's compensation case will not be reversed merely
for an insubstantial error in the admission of evidence.

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board awarding compensation under
the workmen's compensation act.

The case was heard by *Giles*, J.

*E. Hutchings*, for the insurer.

*H. A. Moran*, (*H. A. Moran, Jr.*, with him,) for the
claimant.

RONAN, J. This is an appeal by the insurer from a final
decree awarding compensation to an employee by reason of
an injury received while he was milling lumber into clap-
boards during his lunch period.

The reviewing board found that it was customary for
employees to take orders from third persons for lumber,
some of which was required to be milled; that the employee
would get a sales slip for the stock or material, which would
be charged to the employee and deducted from his pay;
and that if the material was to be milled he would usually
be given a mill order showing the work to be done, which
was to be returned to the employer on completion of the
work in order that a charge for this labor might be made to
the customer. This procedure of obtaining sales slips and
mill orders was not always followed. All money received by
the employee from any of the customers was turned over
by him to the employer. The board also found that at the
time of his injury the employee was making clapboards in-
tended for one Powers and that he had milled clapboards on
previous occasions; that this method of selling lumber
through its employees was established by the employer for
its own convenience; that the employee acted merely as an
agent of the employer who received the entire benefit from

these transactions; and that the injury arose out of and in the course of the employment.

The insurer challenges the correctness of these findings of the board. It contends that the employee was working on his own lumber during his lunch time for his own personal advantage upon a machine which was not suitable but dangerous to use in turning out clapboards; that he was acting entirely outside of his sphere of employment, doing work for which he was not to be paid by the employer and using the employer's machinery for which he was not to pay; and that the injury did not arise out of and in the course of the employment.

In reviewing the findings of the board, we examine the evidence to determine whether the findings, assailed by the appellant, could be reasonably deduced from the evidence and the rational inferences of which it was susceptible, and the decision of the board must be sustained if there may be found from the evidence any facts or combination of facts that would support it. It is the exclusive function of the board to consider and weigh the evidence and to ascertain and settle the facts. Any contention that the board ought to have made contrary findings is unavailing if the findings made are not without sufficient evidentiary support. The decision of the board is not to be set aside unless a different conclusion is required as matter of law. Whatever decision on the facts was possible or probable, the only question of law raised by this appeal is whether there was any evidence upon which the findings could have been made. *Lazarz's Case*, 293 Mass. 538, 540. *Ricci's Case*, 294 Mass. 67. *Griffin's Case*, 315 Mass. 71, 73. *Sawyer's Case*, 315 Mass. 75, 76. *Flaherty's Case*, 316 Mass. 719, 722. *Webb's Case*, 318 Mass. 357, 358.

There was evidence tending to show that the employee had from time to time turned out clapboards on orders from his employer, and that the latter knew that he had performed such work. The board also had before it a bill for lumber sold to the employee for Powers that included clapboards which the employee had turned out of stock similar to that used by him when he was injured. If the board believed

the testimony of witnesses called by the insurer that the mill was not equipped with any machinery suitable for making clapboards, it could nevertheless find that the employer never forbade the use of its machinery for this purpose but knew and permitted the employee to use whatever machinery was available in order to turn out clapboards. A finding was therefore permissible that the making of clapboards on the resawing machine — which was one of the machines he was hired to operate — was one of the duties involved in the employment, even if the necessity for its performance may not have arisen as frequently as some other duties of the employee. *Brady's Case,* 256 *Mass.* 267. *Shute's Case,* 290 Mass. 393. *Ferreira's Case,* 294 Mass. 405. *Maguskas's Case,* 298 Mass. 80. *Warakomski's Case,* 310 Mass. 657. *Schneider's Case,* 311 Mass. 427.

There was no evidence that the employee was guilty of wilful and serious misconduct in operating the machine for the milling of clapboards; and if we assume that he was negligent in so doing, nevertheless the negligent performance of work involved in his employment does not remove the work beyond the bounds of the employment and does not prevent an injury thereby incurred from having a causal connection therewith. *Swardleck's Case,* 264 Mass. 495. *Maguskas's Case,* 298 Mass. 80.

If the employee had voluntarily undertaken for his own personal reasons to make a few clapboards on his own time solely for the accommodation of a friend and the employer had had no interest therein and had derived no benefit therefrom, and in the absence of any evidence tending to show that such use of the machinery was contemplated by the terms of the employment, and if the employee had thereby sustained an injury, such injury as matter of law would not have arisen out of the employment. *O'Toole's Case,* 229 Mass. 165. *Haggard's Case,* 234 Mass. 330. *Maronofsky's Case,* 234 Mass. 343. *Bolden's Case,* 235 Mass. 309. *Dattilo's Case,* 273 Mass. 333. *Horton's Case,* 275 Mass. 572. *Campbell's Case,* 288 Mass. 529. Compare *Batts's Case,* 295 Mass. 335.

There was, however, evidence that the employee at the

time of his injury had not embarked upon an enterprise exclusively for his own personal purpose and beyond the ambit of his employment. The employer was a dealer in lumber and interested in selling its goods. It did, as the evidence shows, establish a method of increasing its sales by selling through its employees lumber requested by third persons, under which payment for the material was deducted from the employee's pay and the customer was charged for the milling. All moneys collected by the employee from those who purchased the lumber were turned over to the employer and the employee was then reimbursed for the amount deducted from his pay. Although there is no specific finding as to who was to bear the cost of the milling of this small quantity of lumber, which comprised only two pieces for which a charge of $1.32 was made to the employee, the board could find that the cost of labor was to be charged to the customer and when collected by the employee was paid to the employer. Clark, who had charge of making out sales slips for the stock and mill orders for whatever milling was to be done, gave a sales slip but no mill order to the employee. The latter testified that he told Clark what he intended to do with the lumber and that Clark told him to go ahead. The employee testified that when he started to mill the lumber he punched a time card, as "right there, I had a whole bunch of them," and that ordinarily when the work was completed the card was punched again and in the usual course of events he or someone else would take the card to the office. The purpose of punching a card when beginning and finishing the milling was to enable the employer to make a charge to the customer for the work. He was fairly sure that there was such a time record of the work he had started on when he was injured. No such record was produced. It may be that he did not intend to make out a time card so that a charge for milling might be made by his employer, and that he did not intend to pay the employer anything on account of the use of the machinery. But these were not the only permissible inferences that could be drawn from the evidence. It may well be, as found by the board, that the failure to complete

the time card for the work was not conclusive against the employee because the injury prevented the completion of this card. Whether the employee intended to follow the usual practice of giving the employer a time card so that a charge to the customer could be made for the milling was a question of fact. The finding of the board that the employer and not the employee received the entire benefit of this method of selling its goods was warranted by the evidence and so was the conclusion that the employee's injury arose out of and in the course of his employment. *Pacific Indemnity Co.* v. *Industrial Accident Commission*, 105 Cal. App. 535. *Glielmi* v. *Netherland Dairy Co. Inc.* 254 N. Y. 60.

Even if the employee was not to receive anything for milling these two pieces of lumber and in doing so he was accommodating Powers, this would not bar him from compensation where it could be found that he was not doing the work in accordance with any gratuity or favor extended to him but that such work had become at least an incident of the employment, *Batts's Case*, 295 Mass. 335; *Sylvia's Case*, 298 Mass. 27, 28; *Warakomski's Case*, 310 Mass. 657, and that he was acting primarily and principally for the benefit of his employer within the sphere of his employment. *Dauphine* v. *Industrial Accident Commission*, 57 Cal. App. (2d) 949. *Kuharski* v. *Bristol Brass Corp.* 132 Conn. 563. *Sater* v. *Home Lumber & Coal Co.* 63 Idaho, 776. *Hinckley & Schmitt* v. *Industrial Commission*, 391 Ill. 577. *Linderman* v. *Cownie Furs*, 234 Iowa, 708. *Schwimmer* v. *Kammerman & Kaminsky*, 262 N. Y. 104. *Munson* v. *State Industrial Accident Commission*, 142 Ore. 252. *Johnson* v. *Industrial Commission*, 222 Wis. 19. Compare *Ross* v. *John Hancock Mutual Life Ins. Co.* 222 Mass. 560; *Horton's Case*, 275 Mass. 572; *Marks* v. *Gray*, 251 N. Y. 90.

The mere fact that the performance of duties which resulted in injury to the employee occurred before or after regular working hours or during a lunch period would not bar him from compensation if his claim was otherwise compensable. *Griffin* v. *Industrial Accident Commission*, 19 Cal. App. (2d) 727. *Tingey* v. *Industrial Accident Com-*

*mission*, 22 Cal. (2d) 636. *Chicago, Wilmington & Franklin Coal Co.* v. *Industrial Commission*, 303 Ill. 540. *Perdew* v. *Nufer Cedar Co.* 201 Mich. 520. *Geibig* v. *Ann Arbor Asphalt Construction Co.* 238 Mich. 560. *Tragas* v. *Cudahy Packing Co.* 110 Neb. 329. *Grieb* v. *Hammerle*, 222 N. Y. 382. *Brown* v. *Bristol Last Block Co.* 94 Vt. 123. Indeed, compensation for an injury which arose out of the actual performance of his work but outside the usual hours could hardly be denied in this Commonwealth where it is well established that an employee is entitled to compensation for an injury sustained outside the regular hours even if at the time of his injury he was engaged in something which was only incidental to his employment. *Souza's Case*, 316 Mass. 332, 335. *Bradford's Case*, 319 Mass. 621, 622–623. *Kubera's Case*, 320 Mass. 419, 421.

Each of the requests for rulings called for a ruling to the effect that upon all the evidence certain facts essential to an award could not be found. This appeal opens up the question whether there was any evidence upon which the findings could have been made, and no other or different question is raised by these requests for rulings. They are disposed of by what has already been said. There was no need for such requests. The findings of the board were sufficiently definite and specific to demonstrate the principles of law adopted by the board in reaching its conclusion. The appellant was entitled to nothing more. The board properly refused to regard any of these requests. *Di Clavio's Case*, 293 Mass. 259, 263. *Belezarian's Case*, 307 Mass. 557, 560, 561. *Amon's Case*, 315 Mass. 210, 215. *Roney's Case*, 316 Mass. 732, 736.

The exceptions to evidence require only a brief discussion. Evidence of previous milling of clapboards by the employee, the whereabouts of the foreman while so engaged, the bill of sale of clapboards for Powers, and the occasional operation of machinery during the lunch period, was competent as bearing upon the scope of employment. There was no error in admitting the testimony of the employee that he had told Clark what he intended to do with the two pieces of lumber and that Clark told him to go ahead. Among

Clark's duties was the issuance of sales slips for stock and orders for milling.  While these orders were usually in writing, the board could find that what he said to the employee amounted to an oral order differing only in form from that which Clark was admittedly authorized to give. Such an oral order could be found to be within Clark's authority.  See *Sanborn* v. *Fireman's Ins. Co.* 16 Gray, 448; *Cass* v. *Lord*, 236 Mass. 430, 432; *Shumway* v. *Home Fire & Marine Ins. Co.* 301 Mass. 391, 394; *Tetrault* v. *Ghibellini*, 316 Mass. 477, 479; *Peay* v. *Reidy*, *ante*, 455, 459; Restatement: Agency, § 229.  The testimony of the employee that he understood that he was to pay for the milling, even if technically inadmissible because it was a conclusion, could not have harmed the insurer but tended to support its contention that the employee was working for himself and not for his employer when he was injured. That evidence might also be fairly construed with reference to other testimony as meaning that the cost of the milling was to be paid by him as he had always done when he turned over to the employer what he collected from the customer.  In any event, the admission of this evidence is too insubstantial to require a reversal of the decision of the board under the rule established in workmen's compensation cases.  *Pigeon's Case*, 216 Mass. 51, 55.  *Beckles's Case*, 230 Mass. 272, 274.  *Sciola's Case*, 236 Mass. 407, 413. *Caccamo's Case*, 316 Mass. 358, 363.

*Decree affirmed.*